H. H. HOLLOWAY, PETITIONER, *v.* THE HONORABLE JOHN W. BARRETT, DISTRICT JUDGE OF THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE, DEPARTMENT 2, THEREOF, RESPONDENT.

No. 6497

July 23, 1971                    487 P.2d 501

*Maurice J. Sullivan,* of Reno, for Petitioner.

*Gray, Horton and Hill; Fry and Fry,* of Reno, for Respondent.

**OPINION**

By the Court, BATJER, J.:

The original action was filed in the district court to recover a judgment for a deficiency remaining upon a promissory note after a trustee's sale of real property pursuant to the terms of a deed of trust.

The petitioner, the plaintiff in the court below, moved for summary judgment in the amount of the difference between the indebtedness at the time of sale and the proceeds of sale.

The defendants below opposed the motion and moved, pursuant to NRS 40.457(2) (Chapter 327, 1969 Statutes of

Nevada),[1] for the appointment of an appraiser, for the purpose of limiting the amount of the default judgment as provided in NRS 40.459.

The respondent district judge denied petitioner's motion for summary judgment and granted the defendant's motion for the appointment of an appraiser pursuant to the present law. He construed NRS 40.457(2) to apply to a promissory note secured by a deed of trust and executed before July 1, 1969,

---

[1](Note: Matter within brackets has been repealed. Italic print denotes newly enacted legislation.)

"SECTION 1.   NRS 40.430 is hereby amended to read as follows:

40.430   1. Except as provided in chapter 104 of NRS, there shall be but one action for the recovery of any debt, or for the enforcement of any right secured by mortgage or lien upon real estate, which action shall be in accordance with the provisions of this section, *sections 3 to 7 inclusive, of this act* and NRS 40.440 and 40.450. In such action, the judgment shall be rendered for the amount found due the plaintiff, and the court shall have power, by its decree or judgment, to direct a sale of the encumbered property, or such part thereof as shall be necessary, and apply the proceeds of the sale to the payment of the costs and the expenses of the sale, the costs of the suit, and the amount due to the plaintiff. [If the land mortgaged consists of a single parcel, or two or more contiguous parcels, situated in two or more counties, the court may, in its judgment, direct the whole thereof to be sold in one of such counties by the sheriff, and upon such proceedings, and with like effect, as if the whole of the property were situated in that county. If it shall appear from the sheriff's return that there is a deficiency of such proceeds and balance still due to the plaintiff, the judgment shall then be docketed for such balance against the defendant or defendants personally liable for the debts, and shall, from the time of such docketing, be a lien upon the real estate of the judgment debtor, and an execution may thereupon be issued by the clerk of the court, in like manner and form as upon other judgments, to collect such balance or deficiency from the property of the judgment debtor.]

"2.   *A sale directed by the court pursuant to subsection 1 shall be conducted by the sheriff of the county in which the encumbered land is situated, and if the encumbered land is situated in two or more counties, the court shall direct the sale to be conducted in one of such counties by the sheriff of that county with like proceedings and effect as if the whole of the encumbered land were situated in that county.*

"SEC. 2.   Chapter 40 of NRS is hereby amended by adding thereto the provisions set forth as sections 3 to 7, inclusive, of this act.

"SEC. 3.   *As used in sections 4 to 7, inclusive, of this act, 'indebtedness' means the principal balance of the obligation secured by a mortgage or deed of trust, together with all interest accrued and unpaid prior to the time of sale, all costs and fees of such foreclosure sale, all advances made with respect to the property by the beneficiary, and all other amounts secured by the mortgage or deed of trust or which constitute a lien on the real property in favor of the person seeking the deficiency judgment. Such amount constituting a lien is limited to the amount of the consideration paid by the lienholder.*

"SEC. 4.   *It is hereby declared by the legislature to be against public*

the effective date of Chapter 327, 1969 Statutes of Nevada, and that the legislation was not subject to the presumption limiting statutes to prospective application.

Chapter 327, 1969 Statutes of Nevada, does not contain any specific language to indicate that the legislature intended it to apply to any document relating to the sale of real property entered into prior to July 1, 1969, or that it was intended to receive retroactive application.

policy for any document relating to the sale of real property to contain any provision waiving the rights of any party which are secured by the laws of this state.

"2. No court shall enforce any such provision.

"SEC. 5. Upon application of the judgment creditor or the trustee within 3 months from the date of the foreclosure sale or the trustee's sale held pursuant to NRS 107.080, respectively, and after the hearing conducted under section 6 of this act, the court may award a deficiency judgment to the judgment creditor or trustee if it appears from the sheriff's return or the recital of consideration in the trustee's deed that there is a deficiency of sale proceeds and a balance remaining due to the judgment creditor or the trustee, respectively.

"SEC. 6. 1. Before awarding a deficiency judgment under section 5 of this act, the court shall hold a hearing and shall take evidence presented by either party concerning the fair market value of the property sold as of the date of foreclosure sale or trustee's sale. Notice of such hearing shall be served upon all defendants who have appeared in the action and against whom a deficiency judgment is sought, or upon their attorneys of record, at least 15 days before the date set for hearing.

"2. Upon application of any party made at least 10 days before the date set for the hearing the court shall, or upon its own motion the court may, appoint an appraiser to appraise the property sold as of the date of foreclosure sale or trustee's sale. Such appraiser shall file with the clerk his appraisal, which is admissible in evidence. The appraiser shall take an oath that he has truly, honestly and impartially appraised the property to the best of his knowledge and ability. Any appraiser so appointed may be called and examined as a witness by any party or by the court. The court shall fix a reasonable compensation for the appraiser, but his fee shall not exceed similar fees for similar services in the county where the encumbered land is situated.

"SEC. 7. After the hearing under section 6 of this act, the court may award a money judgment against the defendant or defendants personally liable for the debt. The court shall not render judgment for more than the amount which the amount of indebtedness which was secured by the mortgage, deed of trust or other lien at the time of the foreclosure sale or trustee's sale, as the case may be, exceeded the fair market value of the property sold at the time of such sale, with interest from the date of such sale. In no event shall the court award such judgment, exclusive of interest after the date of such sale, in an amount exceeding the difference between the amount for which the property was actually sold at the foreclosure sale or trustee's sale and the amount of indebtedness which was secured by the mortgage, deed of trust or other lien at the time of such sale."

The petitioner, claiming no plain, speedy or adequate remedy in the ordinary course of law, and relying upon Dzack v. Marshall, 80 Nev. 345, 393 P.2d 610 (1964), has filed his petition for mandamus. Both parties agree that an order denying summary judgment is interlocutory and not a final judgment, and is not appealable.

The respondent, citing substantial authority [Greater Arizona Savings & Loan Ass'n v. Tang, 400 P.2d 121 (Ariz. 1965); Overmeyer v. Walinski, 222 N.E.2d 312 (Ohio 1966); and the dicta in Chappell & Co. v. Frankel, 367 F.2d 197 (CA 2, 1966)] contends at the outset, that mandamus may not be used to test a denial of a motion for summary judgment and requests us to summarily overrule Dzack v. Marshall, supra. This we decline to do.

In Stocks v. Stocks, 64 Nev. 431, 183 P.2d 617 (1947), this court said: "While courts will indeed depart from the doctrine of stare decisis where such departure is necessary to avoid the 'perpetuation of error' (14 Am.Jur. 341), the observance of the doctrine has long been considered indispensable to the due administration of justice, that a question once deliberately examined and decided should be considered as settled."

In Jensen v. Labor Council, 68 Nev. 269, 229 P.2d 908 (1951), this court quoted with approval from In re Burtt's Estate, 353 Pa. 217, 44 A.2d 670, 677, 162 A.L.R. 1053, 1062: "Otherwise the law would become the mere football of the successively changing personnel of the court, and 'the knowne certaintie of the law,' which Lord Coke so wisely said 'is the safetie of all,' would be utterly destroyed."

Courts are only justified in overruling former decisions where they are deemed to be clearly erroneous. Ex parte Woodburn, 32 Nev. 136, 104 P. 245 (1909).

Although it is apparently a minority view, the rule announced in Dzack v. Marshall, supra, that mandamus will lie when from the record it appears that it is the duty of the district court to enter summary judgment, has been, since 1964 the considered law of this state. It has a useful place in the scheme of justice by requiring careful consideration of motions for summary judgment. We find nothing in the arguments of counsel, nor in the cases cited by the respondent, to dissuade us. See Smith v. Gabrielli, 80 Nev. 390, 395 P.2d 325 (1964). See also Lippman v. Hunt, 227 N.W. 668 (Mich. 1929);

Bank of America National T. & S. Ass'n v. Superior Court, 4 Cal.App.3d 435, 84 Cal.Rptr. 421 (1970).

We now turn to consider whether, in the absence of legislative direction, Chapter 327, 1969 Statutes of Nevada, may be given application to a document relating to the sale of land executed prior to the effective date of that statute.

Early in the history of this court it wrestled with the problems inherent in the retrospective application of laws. In Milliken v. Sloat, 1 Nev. 481 (1865), this court noted: "Retrospective laws have been regarded from remote antiquity as odious and tyrannical, and they have been almost uniformly discountenanced by the courts of Great Britain and the United States." Quoted Lord Bacon, "It is in general true that no statute is to have a retrospect beyond the time of its commencement." Then went on to hold: "We are of the opinion that when a statute is silent as to past time and events, courts are bound to apply it only prospectively. (Citations omitted.) It may be further observed as a general rule, that a statute affecting rights and liabilities, should not be so construed as to act upon those already existing. To give it that effect the statute should in express terms declare such to be the intention.

It has continued to be the law of this state that statutes are presumed to operate prospectively and shall not apply retrospectively unless they are so strong, clear and imperative that they can have no other meaning or unless the intent of the legislature cannot be otherwise satisfied.

Before the enactment of Chapter 327, 1969 Statutes of Nevada, it was proper and appropriate to take a deficiency judgment for the difference between the amount of the judgment and the price bid, but from and after the effective date of that legislation, it became obligatory upon the court to ascertain the fair and reasonable market value of the encumbered premises at the date of sale and to deduct said sum from the amount due on the deficiency in order to ascertain the correct amount of the deficiency judgment.

The question to be decided is whether this change in the law constituted an impairment of the obligation of the promissory note and deed of trust. Here the argument about retrospective and prospective application of Chapter 327, 1969 Statutes of Nevada is purely academic. There is no attempt

upon the part of the trial court to give Chapter 327, 1969 Statutes of Nevada retrospective effect. It is being applied to a deficiency occurring as a result of a trustee's sale held after the effective date of the statute. The only retrospective aspect arises from the fact that the promissory note and the deed of trust were executed prior to the effective date of the statute and may for that reason affect rights already in existence. Although the petitioner contends otherwise, the only real question is whether the statute violates the contract clauses of the Federal Constitution[2] and the Nevada Constitution.[3]

This question was squarely presented to the United States Supreme Court in Gelfert v. National City Bank, 313 U.S. 221 (1941). Justice Douglas, delivering the opinion of the court, traced the history of the control of judicial sales of realty by the courts of equity and by legislatures, and the High Court went on to say: "The formula which a legislature may adopt for determining the amount of a deficiency judgment is not fixed and invariable. That which exists at the date of the execution of the mortgage does not become so embedded in the contract between the parties that it cannot be constitutionally altered. As this Court said in Home Bldg. & L. Ass'n v. Blaisdell, 290 US 398, 435 L ed 413, 427, 54 S Ct 231, 88 ALR 1481, 'Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order.' (Citations omitted.) It is that reserved legislative power with which we are here concerned. Mortgagees are constitutionally entitled to no more than payment in full. Honeyman v. Jacobs, 306 US 539, 83 L ed 972, 59 S Ct 702. They cannot be heard to complain on constitutional grounds if the legislature takes steps to see to it that they get no more than that. As we have seen, equity will intervene in individual cases where it is palpably apparent that gross unfairness is imminent. . . . But there is no constitutional reason why in lieu of the more restricted control by the court of equity the legislature cannot substitute a uniform comprehensive rule designed to reduce or to avoid in the run of cases the chance that the mortgagee will be paid more than once."

The petitioner relies upon a line of California cases and in particular Ware v. Heller, 148 P.2d 410 (Cal.App. 1944), to

[2]The Constitution of the United States provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." Article 1, Sec. 10.

[3]The Nevada Constitution, in Section 15 of Article 1, provides that "no law impairing the obligation of contracts, shall ever be passed."

support his position that we should only be concerned with the question of the prospective and retrospective application of Chapter 327, 1969 Statutes of Nevada, and should ignore the question of the constitutionality of the legislation.

In Ware v. Heller, supra, that court said: ". . . In spite of the fact that the two points are frequently confused into one, the question of the constitutionality of retroactive legislation and the question of the intention of the legislature to make a statute retroactive are distinct questions. The latter question is not a federal one, but one of interpretation of a state statute, on which the decisions of the state courts are controlling. So it is that those cases which hold that the legislature revealed no intention of making section 580a retroactive, and therefore it has no application to actions on notes which are dated prior to 1933, retain their authority, whatever may be said of the controlling authority of the Gelfert case on the constitutional question."

Although we agree that the question of retrospective application of a statute is a state court problem and that the court deciding Ware v. Heller, supra, was obligated to follow the precedent in that jurisdiction, we do not choose to take such a narrow view.

The case of Gelfert v. National City Bank, supra, is directly in point, and we choose to follow it. To the same general effect see Richmond Corp. v. Wachovia Bank, 300 U.S. 124 (1937). See Alliance Trust Co. v. Hill, 164 P.2d 984 (Okla. 1945).

The wording of the Nevada Constitution and that of the Federal Constitution are substantially the same. We therefore conclude that Chapter 327, 1969 Statutes of Nevada, does not impair the obligation of the promissory note and deed of trust under either the State or Federal Constitution in the case of a foreclosure occurring after the effective date of the statute.

The application for a writ of mandate is denied.[4]

ZENOFF, C. J., MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.

---

[4]We are here concerned solely with the application of Chapter 327, 1969 Statutes of Nevada, to a situation where the beneficiary under a deed of trust purchases the property at a trustee's sale held after July 1, 1969. We intimate no opinion on its constitutionality as applied to a case where the beneficiary is not the purchaser, nor to foreclosure and trustee's sales completed prior to the effective date of the statutes.